UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASHUTOSH SHARMA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-2486-x |
| | § | |
| AMAZON WEB SERVICES, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Amazon Web Services, Inc.'s ("Amazon") motion for summary Judgment.  [Doc. 34].  For the reasons below, the Court **GRANTS** the motion.

### I. Background

Ashutosh Sharma worked at Amazon's Dallas-Fort Worth office for about eleven months.  Sharma is forty-six years old, is from India, and speaks with an accent.  He also has carpal tunnel syndrome.  Soon after he began his employment with Amazon, Sharma began reporting to a Caucasian, forty-year-old man named Pieter Loggenberg.  Sharma alleges that Loggenberg treated younger, white, non-disabled employees better than he treated Sharma.

On April 1, 2019, Sharma filed charges of discrimination with the Equal Employment Opportunity Commission.  On September 30, 2019, Amazon fired Sharma.  On October 4, 2019, Sharma filed charges of discrimination with the Texas Workforce Commission's Civil Rights Division.  On October 11, 2021, Sharma filed

his complaint with the Court alleging age discrimination, national origin discrimination, disability discrimination, and retaliation under Chapter 21 of the Texas Labor Code as well as violations of 42 U.S.C. § 1981 ("Section 1981"), Section 1981A, and the Civil Rights Act of 1991.[1]  The Court later dismissed all of Sharma's claims arising under Chapter 21 of the Texas Labor Code,[2] leaving only Sharma's discrimination and retaliation claims under Section 1981.[3]  Amazon now moves for summary judgment on the remaining claims.[4]

## II. Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[6]

## III. Analysis

The Court will consider the discrimination and retaliation claims separately.

### A. Discrimination

The Supreme Court's *McDonnell Douglas* burden-shifting framework governs Section 1981 discrimination claims when, as here, a plaintiff lacks direct evidence of

---

[1] Doc. 1.

[2] Doc. 18.

[3] Sharma's discrimination claim includes claims for both disparate treatment and discriminatory termination.

[4] Doc. 34.

[5] FED. R. CIV. PROC. 56(a).

[6] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

2

discrimination.[7]   Under *McDonnell Douglas*, the plaintiff must make a *prima facie* showing of discrimination.[8]   Plaintiffs may make a *prima facie* showing of discrimination by alleging that "(1) they are members of a racial minority; (2) [the defendant] intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[9]   If the plaintiff successfully raises a *prima facie* discrimination case, that raises a presumption of discrimination, which the defendant may rebut by "articulat[ing] some legitimate, nondiscriminatory reason" for the employer's actions.[10]   If the defendant produces evidence that the perceived discriminatory treatment was justified by a "legitimate, nondiscriminatory reason," the burden then "shifts back to the plaintiff, who must show the articulated reason is pretextual."[11]

Though not clearly delineated in the complaint, Sharma essentially makes two claims regarding discrimination: (1) discrimination by disparate treatment and (2) discrimination by termination.[12]   The Court will first look at disparate treatment before turning to discriminatory termination.

---

[7] *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims.").

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[9] *Body by Cook*, 869 F.3d at 386.

[10] *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (cleaned up).

[11] *Thomas*, 788 F.3d at 179.

[12] This discriminatory termination claim is separate from the retaliation claim which the Court will discuss later.

Sharma attempts to raise a *prima facie* case for disparate treatment by alleging that Amazon discriminated against him by treating a Caucasian, younger employee named Jeremy Hall "more favorably" when it permitted Hall to attend "trainings and out-of-town, in-person customer site visits" while it did not afford Sharma the same opportunities.[13]

Amazon argues that Sharma failed to make a *prima facie* case of discrimination because Sharma cannot demonstrate that he suffered an adverse employment action due to the allegedly disparate treatment.[14]   To establish discrimination under Section 1981, "a plaintiff must prove that he or she was subject to an adverse employment action—a judicially coined term referring to an employment decision that affects the terms and conditions of employment."[15] "[A]dverse employment actions consist of ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating."[16]

Amazon explains that none of its decisions towards Sharma's disparate treatment claim fall within the definition of adverse employment actions.   To demonstrate this, Amazon highlights for the Court Sharma's only piece of evidence to show disparate treatment: Sharma's allegation that "[Amazon] treated Jeremy Hall, a Caucasian peer of Sharma, differently by giving Hall more visible customers and permitting Hall to attend in-person trainings, as opposed to taking trainings

---

[13] Doc. 1 at 3.

[14] Doc. 35 at 22.

[15] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (cleaned up).

[16] *Id.* (cleaned up).

online."[17]   Sharma fails to explain how Hall's alleged receipt of "more visible customers" or more in-person meetings related to Sharma's own hiring, firing, demoting, promoting, granting leave, or compensating.   He cannot.   These two experiences do not rise to the level of "ultimate employment decisions," so they cannot qualify as adverse employment actions.   The decisions referenced by Sharma are quintessential "day-to-day decisions made in the context of the employment relationship," which do not rise to the level of ultimate employment decisions.[18] Therefore, Sharma's complaints regarding his assignments and training opportunities do not raise actionable adverse employment actions under Section 1981, and so the analysis on disparate treatment must end here.

Termination, on the other hand, is an ultimate employment decision that is actionable under Section 1981.   Assuming, without deciding, that Sharma raised a *prima facie* case of discriminatory termination, the Court turns to the next factors in the *McDonnell Douglas* analysis: legitimate, non-discriminatory reasons for termination.   Amazon provides multiple reasons for Sharma's legitimate, non-discriminatory termination, including consistent insubordination and direct violations of instructions.[19]   Most notably, Sharma violated instructions within the Final Written Warning ("FWW") that Amazon issued to him before his firing.[20] Specifically, the FWW required Sharma to engage in "respectful and courteous

---

[17] Doc. 38 at 7.

[18] *Roberson v. Game Stop/Babbage's*, 152 Fed. App'x 356, 361 (5th Cir. 2005) (per curiam).

[19] Doc. 36-1 at 163.

[20] *Id.* at 160–176.

interactions with management," "[r]efrain from continuing to belabor a point once a final decision has been made," and "[e]ngage in professional dialogue" with Loggenberg without "making demands and ultimatums."[21]  The unrefuted evidence shows that Sharma did not follow the instructions of the FWW.[22]

Sharma does not put forth any specific evidence that shows the reasons Amazon terminated him—namely, his allegedly insubordinate, disrespectful, and unprofessional behavior—were pretextual.  Instead, he argues that the Court may rely on "all the evidence" in the record to draw this inference of discrimination.[23]  Whether or not this claim is true, the Court does not know which record evidence to "rely" on because Sharma fails to direct the Court to any of it.  Instead, he exclusively argues for pretext by directing the Court to a previous argument in his response in which he "disputes the majority of the 12 bullet points set forth in the FWW."[24]  To explain his disputes with the 12 bullet points, he alleges that some of the incidents cited in the FWW that lead to the later performance meetings were false.  However, he provides no evidence to support his allegation of falsity of the previous incidents— that lack of evidence proves fatal here.

"A decision as to whether judgment as a matter of law is appropriate ultimately turns on the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports

---

[21] *Id.* at 164.

[22] *See* Doc. 36-5 at 4; Doc. 36-1 at 61–64.

[23] Doc. 38 at 13 (emphasis omitted).

[24] *Id.* at 14.

the employer's case and that properly may be considered on a motion for judgment as a matter of law."[25]  For starters, the strength of the Sharma's *prima facie* case is low because his evidence of discriminatory termination is simply that Loggenberg "made the recommendation that Sharma's employment be terminated."[26]  Sharma does not direct the Court to any instances of Loggenberg displaying any sort of discriminatory animus—only that he fired him.  However, even if the Court found Sharma's *prima facie* case to be strong, the probative value of his proof of the falsity of Amazon's explanation for his termination is negligible because he offers no such proof.  His rebuttals against the truth of the FWW bullet points—though he concedes most of them as true—largely consist of him stating that there was additional context to the situation, but he never explains that the context was discriminatory.  To establish pretext, he must do this.[27]  For the Court to find pretext, the context must demonstrate discrimination in some capacity—his does not.  Further still, Sharma testified that he understood that his failure to maintain certain—undisputed as non-pretextual—standards could result in future action from Amazon, including the potential for termination.[28]  He testified that he was "okay" with these objectives.[29] And he does not dispute that his subsequent conduct violated these objectives.  Taken

---

[25] *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (cleaned up).

[26] Doc. 38 at 8.

[27] *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) ("While [plaintiff] may have believed he suffered discrimination, there is no evidence that such a belief was reasonable. A subjective belief of discrimination . . . cannot be the basis of judicial relief.").

[28] Doc. 36-1 at 55.

[29] *Id.*

together, Sharma fails to defend his claim of falsity, and therefore fails to demonstrate pretext. Accordingly, Sharma's discriminatory termination claim fails.

The Court **GRANTS** the motion for summary judgment as to Sharma's discrimination claims regarding both disparate treatment and discriminatory termination.

### B. Retaliation

Next, Amazon argues that Sharma's retaliation claim fails as a matter of law. Under Section 1981, a *prima facie* retaliation claim "requires that a plaintiff show that: (1) he engaged in an activity protected by [Section 1981]; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."[30]   Again, the *McDonnell Douglas* burden-shifting framework applies.[31]

Amazon first argues that Sharma did not engage in a protected activity under Section 1981 because, "[u]nlike claims under Title VII, claims of 'general race discrimination' that do not relate to race discrimination in the making and enforcement of *contract* rights under Section 1981 are not protected."[32]   Amazon points out that "Sharma alleges retaliation based on complaints/charges he made to the EEOC, DOL, DOJ, and workers compensation claims," and "none of these complaints/charges constitute protected activity under Section 1981 because none

---

[30] *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407 (5th Cir. 2021) (cleaned up).

[31] *Id.*

[32] Doc. No. 35 at 27 (quoting *Hawkins v. TRT Holdings, Inc.*, No. 3:19-CV-01806-X, 2021 WL 149021, at *4 (N.D. Tex. Jan. 15, 2021) (Starr, J.)).

relate to *contract* rights."[33]   "An employee engages in a protected activity under Section 1981 when he has opposed any practice made unlawful by Title VII."[34]   "In other words, to qualify as a protected activity, the employee's conduct must have 'opposed' the employer's practice."[35]

Sharma responds in one short paragraph by saying that his complaints of discrimination to Amazon and the EEOC are sufficient to support a claim under Section 1981.[36]   But Sharma does not show which practice—unlawful under Title VII and involving contract rights under Section 1981—he opposed. [37]   Even after Amazon pointed this flaw out in its motion, Sharma does not address the issue or point the Court to evidence that would raise anything here to the level of a dispute.

Furthermore, Sharma fails to demonstrate that the alleged retaliation would not have occurred but for the protected activity.  In responding to this argument, Sharma explains his belief (1) that the requisite causal link does not have to meet the "but for" standard, and (2) that the close timing between his protected activity and an adverse action may provide a causal connection.[38]   He is, at least partially, incorrect.

---

[33] *Id.* at 28.

[34] *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (cleaned up).

[35] *Id.*

[36] Doc. 38 at 15 ("Contrary to Defendant's argument, Sharma complained of discrimination to Defendant in addition to the EEOC based on his national origin, which is sufficient to assert a claim under Section 1981.").

[37] *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (detailing how the two clauses of the Title VII antiretaliation provision are known as the "opposition clause" and the "participation clause")

[38] Doc. 28 at 15–16.

First, regarding whether the "but for" standard is required, the cases Sharma cites are misleading because those cases did not involve Section 1981 claims.[39]  Courts regularly apply the "but for" causation standard of Section 1981 discrimination claims[40] to Section 1981 retaliation claims.[41]   Second, regarding the temporal proximity between his alleged protected activity and his termination, even if Sharma provided sufficient factual evidence to demonstrate he engaged in a protected activity, "temporal proximity alone is insufficient to prove but for causation."[42]  His evidence is insufficient to create a factual dispute.

As Sharma has failed to demonstrate a genuine dispute of material fact, the Court **GRANTS** Amazon's motion for summary judgment as to his retaliation claim.

## IV. Conclusion

For all these reasons, the Court **GRANTS** Amazon's motion for summary judgment on all of Sharma's claims.  The Court will enter a separate final judgment.

**IT IS SO ORDERED** this 30th day of June, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[39] *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2000); *Septimus v. Univ. of Houston,* 399 F.3d 601, 608 (5th Cir. 2005); *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir. 2007).

[40] *Comcast Corp.*, 140 S. Ct. at 1019 (holding that the "but for" causation standard applies to Section 1981 discrimination claims).

[41] *See, e.g., Hoyt v. Am. Nat'l Ins. Co.*, No. 3:20-CV-0545-L, 2021 WL 2823449, at *9 (N.D. Tex. July 6, 2021) (Lindsay, J.).

[42] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Watkins v. Tregre*, 997 F.3d 275, 287 (5th Cir. 2021) (Oldham, J., dissenting in part) ("We have repeatedly said temporal proximity evidence alone is insufficient to defeat summary judgment.").